**No. 13-4967**

In The

# United States Court of Appeals

For the Fourth Circuit

**UNITED STATES,**

**Appellee,**

**v.**

**JOHNNY KINLAW LOCKLEAR, JR.,**

**Appellant.**

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
AT WILMINGTON (SOUTHERN DIVISION)

# OPENING BRIEF OF APPELLANT
# JOHNNY KINLAW LOCKLEAR, JR.

Phillip C. Zane
GeyerGorey LLP
1776 I Street, NW, Suite 900
Washington, D.C.  20006
202-644-8731
240-525-8736 (facsmile)
phillip.zane@geyergorey.com

Counsel for APPELLANT JOHNNY KINLAW LOCKLEAR, JR.

# Table of Contents

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Jurisdictional Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.  Statement of Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.  Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IV.  Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      A.    The Question of Whether Mr. Locklear Was Entitled to a *Franks* Hearing is a Question of Law That is Reviewed *de Novo*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      B.    In Certain Circumstances a Defendant Has the Right to Challenge the Veracity of Statements Made to Obtain a Search Warrant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      C.    Had the Omitted Information Been Included in the Application for a Search Warrant, There Would Not Have Been Probable Cause to Believe Mr. Locklear Had Committed a Crime. . . . . . . . . . . . . . . . . . . . . . . . . . 12

      D.    Mr. Locklear is Entitled to a *Franks* Hearing. . . . . . . . . . 15

V.  Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Request for Oral Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Certificate of Compliance with Rule 32(a) . . . . . . . . . . . . . . . . . . . . 18

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

## CASES

*Illinois v. Gates*, 462 U.S. 213 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Brady v. Maryland*, 373 U.S. 83 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Colkley*, 899 F.2d 297 (8th Cir. 1990) . . . . . . . . . *passim*

*Franks v. Delaware*, 438 U.S. 154 (1978) . . . . . . . . . . . . . . . . . . . *passim*

*United States v. Tate*, 524 F.3d 449, 455 (4th Cir. 2008) . . . . . . 9, 12, 15

*United States v. Clenney*, 631F.3d 658, 664 (4th Cir. 2011) . . . . . 13, 16

## STATUTES

18 U.S.C. § 922(g)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. §§ 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. App. P. 4(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**Jurisdictional Statement**

Appellant Johnny Kinlaw Locklear, Jr. ("Mr. Locklear") pleaded guilty (JA-85–99)[1] in the United States District Court for the Eastern District of North Carolina to a one-count indictment (JA-14–15) that alleged a violation of 18 U.S.C. § 922(g)(1), which prohibits a felon from possessing a firearm affecting interstate commerce. The Government seized the firearms from Mr. Locklear's home in the Eastern District of North Carolina (JA-38). Jurisdiction in the District Court was proper under 18 U.S.C. § 3231, and jurisdiction was not contested. On December 5, 2013, the District Court sentenced Mr. Locklear to serve 57 months in prison (JA-102–07), the final judgment of that court.

Mr. Locklear filed a Notice of Appeal on December 16, 2013 (JA-108–11). Accordingly, this Court has jurisdiction to hear this direct appeal of the final judgment of the District Court under 28 U.S.C. §§ 1291 and 1294(1). This appeal was filed within fifteen days of the judgment of the District Court and therefore was timely filed under Fed. R. App. P. 4(b).

---

[1] References to the Joint Appendix appear as "JA-__."

1

## I. Statement of Issues.

1.     Did the District Court properly deny Appellant's request for a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), to challenge the propriety of a search warrant where the application was based on recklessly misleading and material information?

## II.  Statement of the Case.

This case began with a fracas near the home that Garey Ransom
("Garey") shared with Nalanie Locklear ("Nalanie"), the daughter of the
Appellant, Johnny Kinlaw Lockear, Jr. ("Mr. Locklear").[2]  Nalanie
sounded the horn of her car when she drove up perhaps because Steven
Locklear's car ("Steven") was blocking the entrance to Garey's driveway,
JA-44, or perhaps to get the attention of Garey, JA-61.  A dispute
ensued over the propriety of the horn-honk, JA-44.  This greatly upset
Nalanie who told Garey what had happened.  JA-47, JA-62.  Garey took
his pistol and went to the scene with Nalanie.  JA-62.  Garey fired shots
toward Steven.  Steven and his brother Nikoma Locklear wrestled the
gun away from Garey.  JA-62.  Soon Garey's brother Junior Ray
Ransom arrived with a rifle, which he fired into the air.  JA-47.  During
the fray, while Nikoma had Garey in a choke-hold, Nalanie telephoned
her father, Mr. Locklear.  JA-44.  Mr. Locklear arrived some time later,

---

[2] Many of the people involved in this case bear the same last name
even if they are not known to be related.  See JA-19.  This brief will
refer them by their first names to avoid confusion, although it will refer
to the Appellant as "Mr. Locklear."

3

by which time tempers had cooled. JA-44–45; JA-47. Although Mr. Locklear was initially charged in state proceedings with discharging a weapon and making threats, those charges were dropped. After an investigation, it became clear that Mr. Locklear had made no threats and had fired no gun during the incident. JA-128. Indeed, the Probation Office omitted the four-level enhancement for use of a firearm during a crime (USSG §2K2.1(b)(6)(B)) from the calculation of the adjusted offense level to be used at Mr. Locklear's sentencing. JA-128.

Steven swore out a warrant that alleged that Mr. Locklear had fired a gun at him and had threatened him. The police interviewed Steven and his brother Nikoma, JA-62–63. They also interviewed Catherine Locklear, a neighbor who had telephoned 9-1-1 during the incident. JA-53–54. Catherine told police that she did not see Mr. Locklear with a gun, and that he had in fact arrived after the shooting was over. JA-52–53.

Sixteen days after the incident, the Robeson County Sheriff's Office applied for a warrant to search Mr. Locklear's home. JA-32–37. Relying on the statements of Steven and his brother, the Sheriff's Office believed there was probable cause to search Mr. Locklear's home for

4

weapons.  The application made no mention of contrary evidence, namely that Mr. Locklear did not bring a gun to the scene and had not even been present at the time shots were fired.  A judge of the Superior Court in Robeson County concluded on the basis of the information presented to him that there was probable cause for the warrant.  JA-31.

Mr. Locklear timely filed a motion to suppress the evidence obtained as a result of that search and requested a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), because the police had intentionally or recklessly withheld information from the court that issued the search warrant.  JA-16.  The trial court denied the motion. JA-58.  In denying the motion, the court noted that the information from the witnesses that Mr. Locklear intended to bring to a *Franks* hearing were friends or family of Mr. Locklear.  If their information had been presented to the judge who heard the request for the warrant, that judge "may properly have questioned their credibility."  But the Sheriff's Office apparently did not question the credibility of Steven and Nikoma regarding the tale of Mr. Locklear's violent threats and gunfire.

If the police had to act in exigent circumstances they might well have been justified in relying on the accounts of the incident offered by

5

only one side to the dispute, but here the police were able to wait sixteen days before applying for a warrant. That was plenty of time to consider whether there might be another side to this dispute among neighbors, whether other witnesses might have seen the events differently, whether the 9-1-1 calls shed light on what happened that night. This case asks the Court to consider, therefore, whether in these circumstances a reasonable police officer should weigh evidence from both sides to a dispute before concluding which side was telling the truth, and that failing to consider equally credible evidence that suggests that there is no cause for a warrant amounts to a reckless disregard for the truth.

6

### III. Summary of Argument.

This case raises a question of law, specifically whether Mr. Locklear was entitled to the *Franks* hearing that he requested in order to challenge false and misleading statements in the warrant application that supported the search warrant that led to his arrest. *Franks v. Delaware*, 438 U.S. 154 (1978). The trial court's decision to deny the hearing is therefore subject to *de novo* review. *Franks* and this court's decision in *United States v. Colkley*, 899 F.2d 297 (8th Cir. 1990), set out the principles for determining whether a hearing is necessary. *Colkley* establishes the test for whether a *Franks* hearing is necessary in a case arising from an allegation that the application for the search warrant was based on misleading omissions: if the omissions were deliberately untruthful or made with reckless disregard for the truth, and the omissions were material to the decision to issue the warrant, the defendant is entitled to the hearing. Mr. Locklear has satisfied the *Colkley* test and was therefore entitled to a *Franks* hearing. His case should therefore be remanded for a *Franks* hearing.

## IV. Argument

A.    The Question of Whether Mr. Locklear Was Entitled to a *Franks* Hearing is a Question of Law That is Reviewed *de Novo*.

In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court held that "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks*, 438 U.S. at 155–56. When a defendant attempts to make a showing that he is entitled to a hearing under *Franks*, he raises a question of law. *United States v. Tate*, 524 F.3d 449, 455 (4th Cir. 2008). This Court therefore reviews a denial of a *Franks* hearing *de novo*. *Tate*, 524 F.3d at 455.

8

B.    In Certain Circumstances a Defendant Has the Right to Challenge
       the Veracity of Statements Made to Obtain a Search Warrant .

The Fourth Amendment makes clear that "no Warrants shall

issue, but upon probable case, supported by Oath or Affirmation." U.S.

CONST. amend. IV.  The information in such oath or affirmation must be

"'truthful' in the sense that the information put forth is believed or

appropriately accepted by the affiant as true." *Franks*, 438 U.S. at 165.

The magistrate who decides whether to issue the warrant "must

determine independently whether there is probable cause." *Franks*, 438

U.S. at 165.  Therefore, "it would be an unthinkable imposition upon his

authority if a warrant affidavit, revealed after the fact to contain a

deliberately or reckless false statement, were to stand beyond

impeachment." *Franks*, 438 U.S. at 165.

Nonetheless, *Franks* does not import into the decision of whether

to issue a warrant the rule of *Brady v. Maryland*, 373 U.S. 83 (1963),

that all exculpatory evidence be disclosed.  *See United States v. Colkley*,

899 F.2d 297, 302 (4th Cir. 1990).  "[A] requirement that all potentially

exculpatory evidence be included in an affidavit would severely disrupt

the warrant process." *Colkely*, 899 F.2d at 303.  Instead, when

9

information is omitted from an affidavit, this Court will apply the

"'totality of the circumstances' test of *Illinois v. Gates*," 462 U.S. 213

(1983), to determine whether to issue a warrant. *Colkley*, 899 F.2d at

301. "This test requires a practical, commonsense decision whether,

given all the circumstances set forth in the affidavit, there is probable

cause to believe the suspect committed an offense." *Colkley*, 899 F.2d at

301–02 (internal quotation marks and citations omitted).

In *Colkley*, the court considered a police officer's omission in his

application for a warrant of the fact that six eyewitnesses had failed to

identify the defendant. The court concluded that the intentional

omission did not require a *Franks* hearing because no affidavit could

include every fact, and thus every omission was in some sense

intentional. Instead, the relevant inquiry is whether "the omission is

the product of a 'deliberate falsehood or of reckless disregard for the

truth.'" *Colkley*, 899 F.2d at 301 (quoting *Franks*). An omission can give

rise to the need for a *Franks* hearing, but it "must do more than

potentially affect the probable cause determination: it must be

'necessary to the finding of probable cause.'" *Colkley*, 899 F.2d at 301

(quoting *Franks*). "For an omission to serve as the basis for a hearing

10

under *Franks*, it must be such that its inclusion in the affidavit would defeat probable cause for arrest." *Colkley*, 899 F.2d at 301.

*United States v. Tate*, 524 F.3d at 449, offers an example where the omission could defeat probable cause for arrest. In *Tate*, a police officer described an investigation of trash bags that he described as "easily accessible from the rear yard" of a particular address. What he allegedly omitted was the fact the police had to trespass onto the defendant's property to get to the trash bags; the trash had not been abandoned on the street. The defendant contended that the police officer would have had to jump a fence, trespass on private property, and then retrieve a trash bag. The court held that this omission was sufficient to require a *Franks* hearing and remanded the case for such a hearing. *Tate*, 524 F.3d at 457.

The District Court believed Mr. Locklear's case was similar to *Colkeley*. It is, however, much more like *Tate*.

11

C.   Had the Omitted Information Been Included in the Application for a Search Warrant, There Would Not Have Been Probable Cause to Believe Mr. Locklear Had Committed a Crime.

A defendant seeking a *Franks* hearing based on omissions from an affidavit must show both (1) "that the omissions were designed to mislead" or "made in reckless disregard of whether they would mislead," and (2) "that the omissions were material, meaning that their 'inclusion in the affidavit would defeat probable cause.'" *See United States v. Clenney*, 631F.3d 658, 664 (4th Cir. 2011) (following and quoting *Colkley* 899 F.2d at 301).

In preparing the affidavit to support the search warrant, the Sheriff's Office relied on the statements of Steven and his brother (Nikoma), mother (Linda Clark), and another Johnny Locklear (not the Appellant) to show probable cause to believe that Mr. Locklear had committed a crime.   JA-60.  When Mr. Locklear requested a *Franks* hearing, he relied on the statements of his daughter, her boyfriend, and others, who were prepared to testify that Mr. Locklear was unarmed that day, and that he had arrived after the shooting was over and the participants in the dispute had calmed down.  The police also

12

interviewed Catherine Locklear[3] who said that Mr. Locklear arrived after the shooting. JA-53. With such conflicting statements, the police should have included evidence from both sides in the affidavit in order to ensure that the judicial officer reviewing the application could make an independent evaluation of whether there was probable cause to believe that Mr. Locklear had committed a crime.

As the trial court observed, however, in seeking a *Franks* hearing, Mr. Locklear relied on friends and family likely to see things his way. But exactly the same can be said of the evidence the police relied on, which came from Steven, his brother, and his mother. The Sheriff's Office deliberately included statements of only those witnesses who supported the claim that Mr. Locklear had committed a crime, and, just as a judicial officer would have questioned the credibility of Mr. Locklear's friends and family in this situation (see the District Court's opinion at JA-63), a judicial officer who knew about the differences between the accounts of those in the Steven Locklear camp and the accounts of those in the Johnny Kinlaw Locklear camp, would have

---

[3] It is not clear from the record whether Catherine is related to any of the Locklears at the center of this controversy.

13

questioned the credibility of Steven and his family.   Thus, this case is quite unlike *Colkley*: In that case, there was ample evidence supporting a conclusion that the defendant had committed a crime, contradicted only by eyewitness identification of strangers, which is notoriously unreliable.  This case is far more like *Tate* where a police office shaded the truth to obscure the fact that although he could reach the trash bags that contained evidence, he could only do so by climbing over a fence and trespassing.

Mr. Locklear therefore satisfied both prongs of the *Colkley* omissions test: Including only the accounts of Steven and his family amounted to reckless disregard of whether omitting the other accounts would mislead because, as Judge Fox noted, in such a situation there is reason to question the credibility of the witnesses.  *See* JA-63.  The second prong of the *Colkley* test is easily satisfied: with two conflicting accounts that are equally credible (or equally suspect), there is no way to conclude which account is more likely true.  Had the statements from the Johnny Kinlaw Locklear camp been available to the Robeson County Court, they would have defeated probable cause.  As in *Tate*, had the warrant application included the information that the Steven

14

Locklear witnesses accused Mr. Locklear of doing something that the Johnny Kinlaw Locklear witnesses insisted he did not do, probable cause would have been defeated.

D.    Mr. Locklear is Entitled to a *Franks* Hearing.

Mr. Locklear requested a *Franks* hearing and set out in his motion facts, supported by affidavits, that showed the recklessness and the materiality of the omissions from the warrant application.  Satisfying this threshold does not, however, end the matter.  To prevail at the hearing and suppress the evidence, he must prove recklessness and materiality by a preponderance of the evidence.  *Clenney*, 631 F.3d at 664.  If he established recklessness and materiality by a preponderance of the evidence, only then must the warrant be voided and the evidence gathered pursuant to that warrant be excluded.  *Colkley*, 899 F.2d at 300.  Accordingly, Mr. Locklear asks this court to remand this case for a *Franks* hearing.

15

## V.  Conclusion.

The Sheriff's Office obtained a warrant to search Mr. Locklear's home by relying solely on the statements of friends and family of the person whose dispute with Mr. Locklear's daughter led to this case.  A prudent police officer would have heard the accounts of both sides to that dispute before concluding that Mr. Locklear had committed a crime.  The constable of Verona does not take the word of the Montagues as evidence of the sins of the Capulets.  The failure of the police to include information from Nalanie Locklear and her boyfriend, as well as the omission of the information from Catherine Locklear, the neighbor who called 9-1-1, deprived the Robeson County judge of his ability to undertake an independent review of the claim of probable cause for a warrant.

Mr. Locklear respectfully requests, therefore, that this case be remanded for a *Franks* hearing to give him the chance to prove, by a preponderance of the evidence, that the omissions were recklessly misleading and material, and that therefore the warrant should be voided.

16

**Request for Oral Argument**

Mr. Locklear requests oral argument in this case. This case raises important questions of law regarding the application of the rule in *Colkley* and the problem of misleading omissions in applications for search warrants.

Respectfully submitted this 8th day of May, 2014.

/s/ *Phillip C. Zane*

_____

Phillip C. Zane
GeyerGorey LLP
1776 I Street, NW, Suite 900
Washington, D.C.  20006
202-644-8731
240-525-8736 (facsimile)
phillip.zane@geyergorey.com

Counsel for Appellant
JOHNNY KINLAW
LOCKLEAR, JR.

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 13-4967        **Caption:** United States v. Johnny Kinlaw Locklear, Jr.

### CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

   This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   ☑ this brief contains _____3248_____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   ☐ this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   ☑ this brief has been prepared in a proportionally spaced typeface using
   WordPerfect _____ [*identify word processing program*] in
   14 Point Century Schoolbook _____ [*identify font size and type style*]; **or**

   ☐ this brief has been prepared in a monospaced typeface using
   _____ [*identify word processing program*] in
   _____ [*identify font size and type style*].

(s) Phillip C. Zane _____

Attorney for Johnny Kinlaw Locklear, Jr. _____

Dated: May 8, 2014 _____

# CERTIFICATE OF SERVICE

I certify that on  May 8, 2014          the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

All parties served by CM/ECF

/s/ Phillip C. Zane                                   May 8, 2014
_____          _____
           Signature                                        Date